United States District Court
Eastern District of Michigan
Southern Division

United States of America,

       Plaintiff,

                                  Hon. Paul D. Borman

v.

                                  Case No. 21-cr-20329

BRANDI HAWKINS,

       Defendant.

_____/

# Plea Agreement

The United States of America and the defendant, BRANDI HAWKINS, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

**1.    Count of Conviction**

The defendant will waive her right to an indictment and will plead guilty to Count 1 of the Information. Count 1 charges the defendant with Wire Fraud under 18 U.S.C. 1343.

**2.    Statutory Minimum and Maximum Penalties**

The defendant understands that the count to which she is pleading guilty carries the following minimum and maximum statutory penalties:

| Count 1 | Term of imprisonment: | 20 years |
| | Fine: | $250,000 |
| | Term of supervised release: | 3 years |

## 3.    Elements of Count of Conviction

The elements of Count 1 are:

**First**, that the defendant knowingly participated in a scheme to defraud in order to deprive another of money or property;

**Second**, that the scheme included a material misrepresentation or concealment of a material fact;

**Third**, that the defendant had the intent to defraud; and

**Fourth**, that the defendant used wire communications in interstate commerce in furtherance of the scheme

## 4.    Factual Basis

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

Between approximately April and June of 2020, in the Eastern District of Michigan and elsewhere, defendant BRANDI HAWKINS engaged in a scheme to defraud the federal government and the State of Michigan (SOM).

HAWKINS abused her position as an Unemployment Insurance Examiner (UIE) for the SOM to release payment on fraudulently filed unemployment claims, often in return for bribes.

HAWKINS released claims that, if disbursed in full, would have resulted in the fraudulent payout of over $12 million earmarked for Pandemic Unemployment Assistance (PUA).  Action by the SOM after HAWKINS's actions were uncovered limited fraudulent payout to approximately $3.8 million.

## Unemployment Insurance and the COVID-19 Pandemic

The Social Security Act of 1935 initiated the federal and state unemployment insurance (UI) system. The system provides benefits to individuals who are unemployed for reasons beyond their control. The purpose of the UI system is twofold: first, to lessen the effects of unemployment through cash payments made directly to laid-off workers, and second, to ensure that life necessities are met on a weekly

basis while the worker seeks employment. In the State of Michigan, the UI system is administered by the Unemployment Insurance Agency.

Since Spring 2020, the federal government has provided significant supplemental benefits to SOM as a result of the COVID-19 pandemic. Beginning in or about March 2020 and continuing through the present, the Families First Coronavirus Response Act (FFCRA); Coronavirus Aid, Relief, and Economic Security (CARES) Act; and American Rescue Plan Act of 2021 (ARPA) have created federal programs that allowed for the significant outlay of federal funds flowing to and through the states to offset the historic need for unemployment benefits by the American workforce, including in the SOM and in the EDMI. Collectively, these benefits are oftentimes referred to as Pandemic Unemployment Assistance.

### Hawkins's Fraudulent Scheme

In April 2020, HAWKINS was assigned as a contract employee to work as an UIE for the SOM. A UIE services claimants, employers, and the public regarding the SOM's UI programs. SOM officials detailed that UIE's are responsible for reviewing, processing, and verifying the legitimacy of various UI claims.

Starting from on or about April 21, 2020, HAWKINS worked as a UIE in a full time telework capacity. HAWKINS's duty station was her residence in Detroit, Michigan. HAWKINS used a computer equipment provided by her employer to access the SOM UIA's Michigan Integrated Data Automated System (MiDAS) system. The SOM's MiDAS system is the state's primary computer system utilized to intake, adjudicate, and pay PUA claims.

Between April and June of 2020, HAWKINS worked with outside actors, known and unknown to law enforcement. Daily, those actors entered numerous false claims into the SOM's UIA system, many of which were filed using stolen identities. These actors communicated with HAWKINS by cellular telephone calls and texts. HAWKINS accepted bribes in return for releasing many of these claims, commonly $250 per claim.

HAWKINS used her insider access to fraudulently release payment on over seven-hundred claims, more than ten of which involved claims filed using stolen identities. HAWKINS's actions resulted in the fraudulent disbursement of approximately $3.8 million of federal and state funds intended for unemployment assistance during

the pandemic.  Had every fraudulent claim released by HAWKINS been disbursed in full, the resulting loss of federal and state funds would have been over $12 million.

HAWKINS's assigned work items and call logs detailed that she had no legitimate reason to access, let alone modify, the fraudulent claims for which she released payment.  HAWKINS disregarded internal notations on claims, including the following statement: "Do not pay; do not close fraud investigation; refer to fraud unit if claimant contacts agency."

Once HAWKINS used her inside access to fraudulently release the PUA claims, the $3.8 million flowed from the State of Michigan's accounts held by Bank of America (BOA).  A significant portion of the funds were disbursed by BOA onto pre-paid BOA debit cards and mailed to address within the EDMI and controlled by outside actors, known and unknown to law enforcement.  The remainder of the fraudulent claims resulted in wire transfers utilizing BOA data center locations in the states of Virginia and Texas to accounts held by various other financial institutions and controlled by HAWKINS's confederates. In either case, the fraudulent funds were largely converted to via cash

withdrawals from automated teller machines (ATMs) throughout the Detroit Metro area and predominantly located within the EDMI.

## 5.    Advice of Rights

The defendant has read the Information, has discussed the charges and possible defenses with her attorney, and understands the crime charged. The defendant understands that, by pleading guilty, she is waiving many important rights, including the following:

A.    The right to plead not guilty and to persist in that plea;

B.    The right to a speedy and public trial by jury;

C.    The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D.    The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E.    The right to confront and cross-examine adverse witnesses at trial;

F.    The right to testify or not to testify at trial, whichever the defendant chooses;

G.     If the defendant chooses not to testify at trial, the right to

have the jury informed that it may not treat that choice as

evidence of guilt;

H.     The right to present evidence or not to present evidence at

trial, whichever the defendant chooses; and

I.     The right to compel the attendance of witnesses at trial.

6.     **Collateral Consequences of Conviction**

The defendant understands that her conviction here may carry

additional consequences under federal or state law. The defendant

understands that, if she is not a United States citizen, her conviction

here may require him to be removed from the United States, denied

citizenship, and denied admission to the United States in the future.

The defendant further understands that the additional consequences of

her conviction here may include, but are not limited to, adverse effects

on the defendant's immigration status, naturalized citizenship, right to

vote, right to carry a firearm, right to serve on a jury, and ability to hold

certain licenses or to be employed in certain fields. The defendant

understands that no one, including the defendant's attorney or the

Court, can predict to a certainty what the additional consequences of

the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from her conviction.

### 7. Defendant's Guideline Range

### A. Court's Determination

The Court will determine the defendant's guideline range at sentencing.

### B. Acceptance of Responsibility

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, her probation officer; obstructing justice in any way;

denying her guilt on the offense to which she is pleading guilty;

committing additional crimes after pleading guilty; or otherwise

demonstrating a lack of acceptance of responsibility as defined in USSG

§ 3E1.1—the government will be released from its obligations under

this paragraph, will be free to argue that the defendant not receive *any*

reduction for acceptance of responsibility under USSG § 3E1.1, and will

be free to argue that the defendant receive an enhancement for

obstruction of justice under USSG § 3C1.1.

### C.    Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal

Procedure 11(c)(1)(B) that the following USSG provisions apply:

§ 2B1.1(b)(1)(K): Loss greater than $9,500,000;

§ 2B1.1(b)(3)(A)(i): More than ten victims; and

§ 3B1.3: Abuse of position of trust.

### D.    Factual Stipulations for Sentencing Purposes

The parties have no additional factual stipulations for sentencing

purposes.

### E.    Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 7.B, 7.C, or 7.D. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### F.    Not a Basis to Withdraw

The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if she disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 7.B, 7.C, or 7.D. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

## 8.    Imposition of Sentence

### A.    Court's Obligation

The defendant understands that in determining her sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing

guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

## B.   Imprisonment

### 1.   Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the government recommends that the defendant's sentence of imprisonment not exceed the top of the defendant's guideline range as determined by the Court.

### 2.   No Right to Withdraw

The government's recommendation in paragraph 8.B.1 is not binding on the Court. The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if the Court decides not to follow the government's recommendation. The government likewise has no right to withdraw from this agreement if the Court decides not to follow the government's recommendation. If however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

### C.    Supervised Release

#### 1.    Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the parties recommend that the Court impose a three-year term of supervised release.

#### 2.    No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 8.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

### D.    Fines

There is no recommendation or agreement as to a fine.

### E.   Restitution

The Court must order restitution to every identifiable victim of the defendant's offense, including but not limited to the following victims: **State of Michigan - $3,793,186**

The Court will determine at sentencing if there are any additional victims and, if so, the amounts of restitution that they are owed.

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The defendant agrees to make a full presentence disclosure of her financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the purpose of determining her ability to pay restitution. The defendant agrees to complete and return the Financial Disclosure Form within

three weeks of receiving it from government counsel. The defendant agrees to participate in a presentencing debtor's examination if requested to do so by government counsel.

**F.    Forfeiture**

Defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) as incorporated by 28 U.S.C. § 2461(c), without contest, any and all right, title, and interest, she may possess in property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds traceable to the scheme underlying her violation of Count 1 of the Information.

The forfeiture agreement includes the imposition a Forfeiture Money Judgment against the defendant in favor of the United States, in the amount of $106,250. The Forfeiture Money Judgment represents the value of property personally obtained by defendant as a result of her violation of Count 1 of the Information. Defendant agrees that the Forfeiture Money Judgment may be satisfied, to whatever extend possible, from any property owned or under the control of the defendant. To satisfy the money judgment, defendant explicitly agrees to the forfeiture of any assets she has now, or may later acquire, as

substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes her right to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

The defendant also agrees to abandon or otherwise forfeit her interest in the following U.S. currency seized from the defendant's residence during the execution of a search warrant on July 7, 2020:

- $163,490.00 U.S. Currency;
- $52,300.00 U.S. Currency;
- $20,040.00 U.S. Currency; and
- $3,111.00 U.S. Currency.

Defendant agrees to the entry of one or more orders of forfeiture incorporating the forfeiture of any property, including the Court's prompt entry of a Preliminary Order of Forfeiture as to the Forfeiture Money Judgment, following defendant's guilty plea, upon application by the United States at or any time before her sentencing in this case, as mandated by Fed. R. Crim. P. 32.2. Defendant agrees to sign such an order, indicating she consents to its entry if requested to do so by the Government.

Defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that she understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise her of this, pursuant to Rule 11(b)(l)(J), at the time her guilty plea is accepted.

Defendant further agrees to waive all constitutional and statutory challenges in any manner to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including, but not limited to, any Double Jeopardy challenge and any challenge that the forfeiture constitutes an excessive fine or punishment under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. For any property subject to forfeiture that constitutes or is derived, directly or indirectly, from proceeds traceable to the scheme underlying defendant's violation of Count 1 of the Information, Defendant agrees that she will cooperate with the United States by taking whatever steps are necessary to deliver clear title to the properties to be forfeited to the

United States and will execute such legal documents as may be required to transfer title to the United States and by taking whatever steps are necessary to ensure that the property is not transferred, disbursed, hidden, wasted or otherwise made unavailable for forfeiture. Defendant further agrees that she will not assist any third party in asserting a claim to the property to be forfeited in any forfeiture proceeding (judicial or non-judicial) and that she will testify truthfully in any judicial forfeiture proceeding if requested to do so by the government.

### G. Special Assessment

The defendant understands that she will be required to pay a special assessment of $100, due immediately upon sentencing.

## 9. Appeal Waiver

The defendant waives any right she may have to appeal her conviction on any grounds. If the defendant's sentence of imprisonment does not exceed the top of the guideline range determined by the Court, the defendant also waives any right she may have to appeal her sentence on any grounds.

10.    **Collateral Review Waiver**

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right she may have to challenge her conviction or sentence by collateral review, including, but not limited to, any right she may have to challenge her conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

11.    **Consequences of Withdrawal of Guilty Plea or Vacation of Judgment**

If the defendant is allowed to withdraw her guilty plea, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the

conduct underlying the defendant's guilty plea or any relevant conduct. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives her right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

**12.    Use of Withdrawn Guilty Plea**

The defendant agrees that if she is permitted to withdraw her guilty plea for any reason, she waives all of her rights under Federal Rule of Evidence 410, and the government may use her guilty plea, any statement that the defendant made at her guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

**13.    Parties to Plea Agreement**

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

**14.    Scope of Plea Agreement**

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations,

understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

## 15.   Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 9:00 on June 30, 2021. The government may withdraw from this agreement at any time before the defendant pleads guilty.

Saima S. Mohsin
Acting United States Attorney

JOHN NEAL    Digitally signed by JOHN NEAL
Date: 2021.06.03
15:40:55 -04'00'

TIMOTHY WYSE    Digitally signed by TIMOTHY WYSE
Date: 2021.06.03
16:17:26 -04'00'

John K. Neal
Chief, White Collar Crime Unit
Assistant United States
Attorney

Timothy J. Wyse
Assistant United States
Attorney

Dated: June 3, 2021

By signing below, the defendant and her attorney agree that the
defendant has read or been read this entire document, has discussed it
with her attorney, and has had a full and complete opportunity to
confer with her attorney. The defendant further agrees that she
understands this entire document, agrees to its terms, has had all of her
questions answered by her attorney, and is satisfied with her attorney's
advice and representation.

_____           _____
Randall P. Upshaw                          Brandi Hawkins
Attorney for Defendant                     Defendant

Dated: 6/24/2021