UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| United States of America, | Case No.: 21-cr-20329 |
| | Hon. Paul D. Borman |
| Plaintiff, | |
| v. | |
| Brandi Hawkins, | |
| Defendant.                              / | |

## **GOVERNMENT'S SENTENCING MEMORANDUM**

Brandi Hawkins was a contractor employed by the State of Michigan to review unemployment claims. She was hired at the height of the COVID-19 pandemic, and her job was to review claims flagged by the state's computer system as potentially problematic. Hawkins betrayed the trust of the state, taking bribes and using her insider access to release payment on over seven-hundred fraudulent claims. Her actions resulted in the fraudulent disbursement of approximately $3.8 million of federal and state funds intended for unemployment assistance during the pandemic. Had every fraudulent claim released by Hawkins been disbursed in full, the resulting loss of federal and state funds would have been over $12 million.

Hawkins's guidelines, as estimated by the parties and as calculated by the Presentence Investigation Report (PSR), call for a sentence of 78 – 97 months. The government requests that the Court adopt a reduced guidelines range of 58 – 72

months when sentencing the defendant.

For the reasons stated in this memorandum, a sentence of 72 months incarceration—the high point of reduced guidelines range sought by the government—followed by three years of supervised release, is "sufficient, but not greater than necessary," pursuant to the purposes of 18 U.S.C. § 3553(a).

## I.   OFFENSE CONDUCT

On June 30, 2021, Brandi Hawkins pleaded guilty, pursuant to a Rule 11 Agreement, to one count of wire fraud in violation of 18 U.S.C. §1343.

In April 2020, Hawkins was assigned as a contract employee to work as an Unemployment Insurance Examiner (UIE) for the State of Michigan (SOM). A UIE services claimants, employers, and the public regarding the SOM's Unemployment Insurance (UI) programs. UIE's are responsible for reviewing, processing, and verifying the legitimacy of UI claims.

Between April and June of 2020, Hawkins worked with outside actors, known and unknown to law enforcement. Daily, via computer, those actors submitted numerous false unemployment claims to the SOM; many of these claims were filed using stolen identities. These actors communicated with Hawkins by cellular telephone calls and texts, providing personally identifiable information (PII) which Hawkins used to locate the claims within the SOM's internal computer system. Hawkins would then release the "fraud hold" on these claims, which resulted in them

being paid out to her coconspirators. She accepted bribes in return for releasing many of them, commonly $250 per claim.

Hawkins used her insider access to fraudulently release payment on over seven-hundred claims. Her actions resulted in the fraudulent disbursement of approximately $3.8 million in federal and state funds intended for unemployment assistance during the pandemic. Had every fraudulent claim released by Hawkins been disbursed in full, the resulting loss of federal and state funds would have been over $12 million.

Hawkins's assigned work items and call logs detailed that she had no legitimate reason to access, let alone modify, the fraudulent claims for which she released payment. She disregarded internal notations on claims, including the following statement: "Do not pay; do not close fraud investigation; refer to fraud unit if claimant contacts agency."

## II.     Restitution

As part of her Rule 11 agreement, Hawkins has agreed that the Court will order restitution the State of Michigan in the amount of $3,793,186.

## III.    Forfeiture

Hawkins has agreed to the imposition of a Forfeiture Money Judgment against her in favor of the United States in the amount $106,250, representing the value of property she personally obtained as a result of her crime. Hawkins has

further agreed to consent to the entry of an order of forfeiture implementing the forfeiture money judgment. The government will submit the proposed order to the court for entry prior to sentencing.

## IV. Guidelines Range

The PSR calculates that Hawkins's sentencing guidelines call for a term of imprisonment of 78 – 97 months. The government concurs, and Hawkins does not dispute this range. As previously noted, the government is requesting that a reduction in Hawkins's guidelines to 58 – 72 months.

## V. Sentencing Factors

Title 18, United States Code, Section 3553(a), sets forth a number of factors the Court shall consider in sentencing the defendant. These factors are described below, numbered as corresponding to Section 3553(a):

**(1) The nature and circumstances of the offense…**

Hawkins's guideline range is driven largely by the agreed upon loss amount—over twelve million dollars of attempted loss, with nearly four million dollars of actual loss. The magnitude of these figures speaks for itself, but the guidelines fail to account for aggravating factors that elevate the seriousness of Hawkins's crime beyond that of an "average" multi-million-dollar scheme.

Chief among these factors is that Hawkins's crimes frustrated the government's attempt to get millions of dollars in aid to unemployed American's

4

who lost their jobs during the COVID-19 pandemic. The *raison d'état* of Hawkins's job was to prevent fraud. She was tasked with weeding out claims that were filed in bad faith. She instead enabled the very fraud that she was employed to prevent, taking bribes that resulted in millions of dollars ending up in the hands of criminals instead of needy citizens.

Not only did Hawkins frustrate the government's aid scheme, but her actions undermined faith in the government's ability to help unemployed Americans at their most vulnerable. Hawkins's greedily engaged in her scheme at a unique historical moment. She took advantage of the government's need for rapid action, siphoning off millions of dollars in government aid to her coconspirators.

The guidelines do not capture these factors; they cannot because of unique circumstances connected to a historic pandemic. But the government asks that the Court to take this background into account in fashioning a sentence that best serves the interest of justice.

**…and the history and characteristics of the defendant;**

Hawkins's criminal history score is zero. But this is deceptive. She has several past arrests, and she has convictions for retail fraud and assault and battery. Because of the age of these convictions, they do not raise her guidelines. But the Court can, and the government believes that it should, take them into account when

evaluating Hawkins's character and deciding where to sentence her within the guidelines.

**(2) The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the public from further crimes of the defendant; and (D) to provide defendant with appropriate education or vocational training.**

Hawkins's punishment should take into account not only the scope and seriousness of her criminal conduct but also the need to deter future crimes—both by Hawkins and by others. With respect to specific deterrence, significant incarceration is necessary to demonstrate to Hawkins the proverbial mantra that "crime does not pay."

The sentence must also function as a general deterrent. This is crucial in this case. Over the past year-plus, the government has acted rapidly to enact numerous programs to aid to those whose livelihoods have been impacted by the COVID-19 pandemic. Unemployment aid, payroll loans, and other forms of aid have been aggressively rolled out to help keep Americans financial stable during dark times. Unfortunately, but also unsurprisingly, fraudulent applications for such aid are rampant. Harsh punishment for those caught abusing such aid programs is needed to deter others who see these programs as targets for fraud.

**(3) The kinds of sentences available**

Under 18 U.S.C. § 1343 (Wire Fraud), the maximum penalty is twenty years imprisonment and/or a fine not to exceed $250,000.00.

**(4) The sentencing range established by the Guidelines**

As set forth above in Section IV, the appropriate sentencing range, pursuant to the U.S. Sentencing Guidelines, is 78 to 97 months imprisonment. The government is requesting that the Court apply a reduced range of 58 – 72 months.

**(5) Pertinent policy statements issued by the Sentencing Commission**

The government is unaware of any pertinent policy statement issued by the United States Sentencing Commission.

**(6) The need to avoid unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct**

The government believes that a guideline sentence will best ensure uniformity in sentencing among similarly situated defendants.

**(7) The need to provide restitution**

Restitution is mandatory in this case, as dictated by the Mandatory Criminal Restitution Act codified at 18 U.S.C. § 3663A.  The necessary restitution in this case is described above in Section II.

## **RECOMMENDATION**

For all the reasons above, the government recommends that defendant Brandi Hawkins be sentenced to a term of 72 months in prison followed by three years of supervised release and also ordered to pay restitution as described above in Section II.

Respectfully submitted,

SAIMA MOHSIN
Acting United States Attorney

 /s/  Timothy J. Wyse
Timothy J. Wyse
Assistant U.S. Attorney
(313) 226-9144
211 West Fort, Suite 2001
Detroit, Michigan  48226
Timothy.Wyse@usdoj.gov

October 21, 2020